1  DAVID M. GIVEN (State Bar No. 142375)
   PHILLIPS, ERLEWINE & GIVEN LLP
2  50 California Street, 35th Floor
   San Francisco, California 94111
3  Telephone: (415) 398-0900
   Facsimile: (415) 398-0911
4
   Attorneys for Plaintiffs
5

FILED
FEB 1 2 2010
RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

E-filing

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

CV 10    6367  HRL

ROKY ERICKSON, individually and doing business as ROKY ERICKSON MUSIC; CRAIG LUCKIN, individually and doing business as ORB PRODUCTIONS and ORB MUSIC CO.,

    Plaintiffs,

v.

SYMPATHY FOR THE RECORD INDUSTRY, a doing business as designation for JOHN MERMIS, a/k/a LONG JOHN GONE, an individual,; INDEPENDENT LABEL COLLECTIVE LLC, a limited liability company,

    Defendants.

Case No.

**COMPLAINT FOR BREACH OF WRITTEN CONTRACT AND FRAUD AND FOR COPYRIGHT INFRINGEMENT**

**JURY TRIAL DEMANDED**

Plaintiffs allege:

1.     This case arises from the unauthorized use and exploitation of the master recordings and songs embodied on the critically acclaimed album "ROKY ERICKSON & THE ALIENS—THE EVIL ONE (PLUS ONE)" by JOHN MERMIS, an individual who takes routine unfair advantage of musicians, songwriters, and other creative rights-holders in furtherance of his business, which he has named SYMPATHY FOR THE RECORD INDUSTRY. Indeed, he has been admiringly referred to as a "modern day pirate" in a

film about his life, "The Treasures of Long Gone John." In the present instance, MERMIS has flouted the law and failed and refused to honor his legal and moral obligations to those responsible for the creative works that he has used and exploited here for profit.

## JURISDICTION AND VENUE

2. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 and § 1338(a). The alleged unlawful acts and violations described below were in part conceived, carried out and made effective within the Northern District of California. Defendants transact or have transacted business within this District.

3. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) (2) and, as may be applicable, pursuant to 28 U.S.C. § 1391(c).

## THE PARTIES

4. Plaintiff ROKY ERICKSON is a resident of the State of Texas, doing business from time to time as ROKY ERICKSON MUSIC, a sole proprietorship with its principal place of business in the State of California.

5. Plaintiff CRAIG LUCKIN is resident of the State of Oregon, doing business from time to time as ORB PRODUCTIONS and ORB MUSIC CO., both sole proprietorships with their principal place of business in the State of Oregon and the State of California, respectively.

6. Defendant SYMPATHY FOR THE RECORD LABEL is a doing business as designation for JOHN MERMIS, a/k/a LONG JOHN GONE, an individual residing in the State of Washington and who, at all relevant times, was doing and does business throughout the State of California.

7. Plaintiff is informed and believes, and thereon alleges, that SYMPATHY FOR THE RECORD INDUSTRY was once a California limited liability company, operating from Long Beach, California, owned and operated exclusively by MERMIS, whose status as such was canceled by the California Secretary of State in 2002. Thereafter, and until in or around July 2007, MERMIS continued to operate from Long

1  Beach, California, individually and doing business as SYMPATHY FOR THE RECORD
2  INDUSTRY. MERMIS was and is responsible for all of the wrongs and damages as
3  alleged below, and in so acting was functioning for any relevant period of time as the
4  agent, servant, partner, alter ego and/or employee of the foregoing limited liability
5  company or any other such business entity, and in doing and/or not doing the actions
6  mentioned below was acting within the course and scope of his authority as such agent,
7  servant, partner, alter ego and/or employee with the permission and consent of any such
8  entity. Further, all acts herein alleged were approved of and ratified by MERMIS.

      8. Defendant INDEPENDENT LABEL COLLECTIVE LLC ("ILC") is, based on information and belief, a limited liability company organized under the laws of the State of Virginia and a record distributor with its principal place of business in Richmond, Virginia. Sometime after July 2007, ILC began acting as distributor for MERMIS.

### FACTS COMMON TO ALL CLAIMS

      9. ROKY ERICKSON rose to legendary cult-hero status beginning in the 1960's as the guitar player, vocalist and principal songwriter in the psychedelic rock band known as THE 13th FLOOR ELEVATORS. In 1965, at the age of eighteen, he penned his most famous composition, "You're Gonna Miss Me," which became a *Billboard Magazine* Top 100 hit for the Elevators in 1966. The track was later used in the opening sequence of the movie HIGH FIDELITY starring John Cusack as well as the first track on the soundtrack album. Over the years, ERICKSON's songs have been covered by numerous recording artists, including R.E.M., ZZ TOP and the BUTTHOLE SURFERS.

      10. In or about 1979, ERICKSON recorded the musical compositions appearing on an album that eventually became known as "ROKY ERICKSON & THE ALIENS—THE EVIL ONE (PLUS ONE)" (the "Album"), ERICKSON's first American solo album which, following its release in the U.S., went on to critical acclaim (four stars given by *Rolling Stone Magazine*) and became a cult classic. A song and track list for the Album is attached hereto as Exhibit A and incorporated herein by this reference. The

musical compositions and sound recordings on the Album are original to ERICKSON and are copyrightable subject matter under U.S. law.

11. CRAIG LUCKIN financed all or substantially all of the costs of producing and recording the Album and was responsible for organizing the recording sessions and bringing together the various elements necessary to complete the Album. In that connection, LUCKIN entered into separate written agreements with ERICKSON by which LUCKIN acquired all (in the case of the sound recordings) or most (in the case of the musical compositions) of the right, title and interest in and to the musical compositions (with two exceptions, "Two Headed Dog" and "Don't Shake Me Lucifer," which remained with ERICKSON) and sound recordings on the Album, respectively, including the copyrights therein. Collectively, ERICKSON and LUCKIN are therefore the owners of all right, title and interest in and to such copyrights, with exclusive authority to control and administer the copyrights in and to both the musical compositions and the sound recordings throughout the world.

12. In or about August 1977 and again in November 1980, at or around the time of the Album's first release in the U.K., LUCKIN registered the copyright in the musical compositions appearing on the Album with the U.S. Copyright Office, bearing registration numbers EP 372570, EU 725264, U 149487, PA 86-609, PA 86-610, PA 86-611, PA 86-612, PA 86-613, PA 86-621, PA 86-622, PA 87-678, PA 94-719 and PA 121-174. In January 1982 and then in July 1985, at or around the time of the Album's first release in the U.S., LUCKIN registered the copyright in the sound recordings appearing on the Album with the U.S. Copyright Office, bearing registration numbers SR 32-147 and SR 64-549. At all times, the musical compositions and sound recordings have been published and otherwise exploited by ERICKSON or LUCKIN, or by others under their authority or license, in conformity with the Act.

13. In or about February 2002, LUCKIN and MERMIS entered into a written agreement pursuant to which LUCKIN granted certain rights to MERMIS in and to the sound recordings embodied on the Album, in return for a promise by MERMIS to pay

royalties to LUCKIN for the use of those sound recordings (the "Agreement"). A true and correct copy of the Agreement is attached hereto as Exhibit B. The parties entered into the Agreement while both were located in the State of California; the parties contemplated that performance would take place in the State of California; and the Agreement is governed by the law of the State of California.

14. Notwithstanding the foregoing, MERMIS has failed and refused, and continues to fail and refuse, to account for any Album sales or to pay any royalties due LUCKIN as consideration for the rights in and to the sound recordings granted under the Agreement.

15. Moreover, MERMIS has failed and refused, and continues to fail and refuse, to obtain the necessary clearance for the rights in and to the musical compositions appearing on the Album or to pay any royalties due to Wixen Music Publishing (acting on behalf of and as agent for both ERICKSON and LUCKIN in the administration of the musical compositions) as consideration for such rights and as provided for under the Agreement.

16. Plaintiffs are informed and believe, and thereupon allege, that following expiration of the term of the Agreement on Feb. 12, 2007 (subject to a six-month "sell-off" period as provided for therein), MERMIS continued to manufacture, sell and distribute (via ILC) the Album in various formats, including but not limited to compact discs and digital downloads (the latter of which he never had the right to do), embodying or incorporating plaintiffs' copyrights. At no time after expiration of the term of the Agreement have plaintiffs authorized either defendant in any way to use or exploit any portion of the songs or recordings appearing on the Album.

### FIRST CLAIM – BREACH OF CONTRACT
**(By Luckin Against Mermis)**

17. Plaintiff Luckin realleges and restates the foregoing paragraphs 1 through 16.

18. Luckin has performed all covenants, conditions and promises required of him to be performed under the Agreement and/or was excused from performing such obligations.

19. At various times during the last four years, Mermis has breached the Agreement by and in, among other things, the manner alleged herein above.

20. As a direct and proximate result of the foregoing acts and conduct of defendant and by reason of his breach of his obligations under the Agreement, Luckin has been damaged in an amount which he cannot presently ascertain with complete certainty, but which he believes is at least $75,000 (plus interest thereon).

## SECOND CLAIM – FRAUD

### (By Luckin Against Mermis)

21. Plaintiff Luckin realleges and restates the foregoing paragraphs 1 through 16.

22. Mermis made promises and other representations to Luckin in the course of negotiating, drafting and executing the Agreement which he did not intend to keep or honor. Mermis made these promises and other representations, including those contained in the Agreement (i.e., to account for and pay royalties; to clear the musical compositions for use on the Album), intending Luckin to rely thereon, and Luckin did reasonably rely thereon, in entering into the Agreement.

23. As a direct and proximate result of the foregoing acts and conduct of Mermis and by reason of his fraudulent intent not to perform his contractual obligations under the Agreement, Luckin has been damaged in an amount which he cannot presently ascertain with complete certainty, but which he believes is at least $75,000 (plus interest thereon).

24. The alleged acts constituting this claim were committed by Mermis with oppression, fraud and/or malice, as defined in California Civil Code §3294, and therefore Luckin is entitled to recover punitive damages against Mermis.

## THIRD CLAIM – COPYRIGHT INFRINGEMENT

### (By Erickson and Luckin Against Mermis and ILC)

25. Plaintiffs reallege and restate the foregoing paragraphs 1 through 24.

26. Beginning sometime within the last three years, continuously thereafter and to the present, defendants infringed plaintiffs' musical composition and sound recording copyrights by, among other things, manufacturing, selling and distributing the Album in various formats, including but not limited to compact discs and digital downloads, embodying or incorporating plaintiffs' copyrights.

27. Until August 2007, Mermis purported to sell and distribute the Album in the CD format only under color of right pursuant to the Agreement. However, given the foregoing allegations, there was a complete failure of consideration under the Agreement or fraud in the inducement of the Agreement, or both, abrogating any rights defendant might have otherwise acquired under the Agreement. In addition, as alleged above, at no time did Mermis obtain the necessary clearance for the rights in and to the songs appearing on the Album or to pay any royalties due as consideration for such rights. In addition, Mermis used or exploited the copyrights in question in a manner going beyond the scope of the Agreement during its term (i.e., by distributing the Album via digital download), and continued to use and exploit those copyrights after expiration of the Agreement and to the present.

28. Plaintiffs are informed and believe, and thereupon allege, that defendants continue to infringe plaintiffs' copyrights by, among other things, manufacturing, selling and distributing the Album in various formats, including but not limited to compact discs and digital downloads, embodying or incorporating plaintiffs' copyrights.

29. For purposes of a statutory damages determination only, plaintiffs are informed and believe, and thereupon allege, that Mermis' infringement of plaintiffs' copyrights was intentional, continuous, and systematic and that Mermis is a serial copyright infringer.

## PRAYER FOR RELIEF

WHEREFORE, plaintiffs pray for judgment as follows:

**On the First Claim:**

For damages in an amount to be proven at trial, but at least $75,000, plus interest thereon;

**On the Second Claim:**

For damages in an amount to be proven at trial, but at least $75,000, plus interest thereon, together with exemplary and punitive damages in an amount to be proven;

**On the Third Claim:**

For plaintiff's damages and defendant's profits in an amount to be proved at trial, but at least $75,000, or in the alternative and at plaintiffs' election, statutory damages against defendant in the maximum amount allowed by the Copyright Act for each infringement, together with plaintiffs' reasonable attorneys' fees and costs of suit as allowed by the Copyright Act;

**On All Claims:**

For statutory fees and costs and such other and further relief as this Court deems just and proper.

Dated: February 12, 2010                    PHILLIPS, ERLEWINE & GIVEN LLP

By: _____
    David M. Given
    Attorneys for Plaintiffs

## JURY DEMAND

Plaintiffs hereby demand a jury trial as provided by Rule 38(a) of the Federal Rules of Civil Procedure.

Dated: February 12, 2010

PHILLIPS, ERLEWINE & GIVEN LLP

By: _____
David M. Given
Attorneys for Plaintiffs

**EXHIBIT A**

**Roky Erickson & the Aliens:**

**The Evil One (plus one):**

DISC ONE

1. Two Headed Dog (Red Temple Prayer)
2. I Think of Demons
3. Creature with the Atom Brain
4. The Wind and More
5. Don't Shake Me Lucifer
6. Bloody Hammer
7. Stand for the Fire Demon
8. Click Your Fingers Applauding the Play
9. If You Have Ghosts
10. I Walked with a Zombie
11. Night of the Vampire
12. It's a Cold Night for Alligators
13. Mine Mine Mind
14. Sputnik
15. White Faces

DISC TWO (The Modern Humans Show August 20, 1979 KSJO Radio)

1. Click Your Fingers Applauding the Play
2. Modern Humans Show
3. It's a Cold Night for Alligators
4. Modern Humans Show
5. Creature with the Atom Brain
6. Modern Humans Show
7. The Night of the Vampire
8. Modern Humans Show
9. White Faces
10. Bloody Hammer
11. Modern Humans Show
12. Sputnik
13. Two Headed Dog (Red Temple Prayer)
14-17. Modern Humans Show
18. Mine Mine Mind
19. Modern Humans Show
20. I Walked with a Zombie

**EXHIBIT A**

**EXHIBIT B**

ORB PRODUCTIONS
c/o Simons & Stein
255 3rd Street, #303
Oakland, CA 94607
(510) 836-0800

Dated as of February 12, 2002

Mr. John Mermis
Sympathy for the Record Industry
4450 California Place, #303
Long Beach, CA 90807

Re: License Agreement Between Orb Productions and Sympathy for the Record Industry

Dear John:

The following constitutes the basic terms and conditions of the license agreement between Orb Productions, as represented by Craig Luckin (hereinafter referred to as "Licensor"), for the license of master recordings by the musical artist professionally known as "Roky Erickson" (hereinafter referred to as "Artist") and Sympathy for the Record Industry, as represented by John Mermis (hereinafter referred to as "Licensee" and/or "Company").

In consideration of the mutual covenants and conditions contained herein, the parties agree as follows:

1. Masters: Licensor hereby licenses to Company an album (hereinafter referred to as the "Album") comprised of master recordings featuring the musical performances of Artist as set forth in Exhibit A, attached hereto and incorporated by this reference (hereinafter referred to as the "Masters"), solely for the purpose of manufacturing and distributing phonograph records and compact discs comprised of Masters hereunder, subject to the terms and conditions set forth herein. The phonograph records embodying the Masters are sometimes referred to herein as "Records".

2. Territory: Licensor hereby licenses and assigns the Masters to Company throughout the United States of America and Canada (hereinafter referred to as the "Territory").

3. License Term: The License Term shall commence upon the date hereof and shall continue until the date five (5) years following Licensor's delivery and Company's satisfactory receipt of the Masters covered by the term hereof. Upon expiration of the License Term, Company shall cease and desist from any and all manufacturing of Records hereunder, and shall have a period of six (6) months to sell off its existing inventory of the Records (the "Sell-Off Period"), and at the end of the Sell-Off Period, either scrap all inventory, or at Licensor's election, make same available for acquisition

**EXHIBIT B**

by Licensor at Company's cost. Upon expiration of the License Term, the Masters, together with all rights therein, shall automatically revert to Licensor.

4. Delivery: The term "delivery", used in connection with the Masters shall mean the completion of all services required to be performed by Licensor under this contract in connection with the Masters and the Album, in a form technically and commercially satisfactory for the manufacture and release of Records embodying the same, to Company's address listed above, of the LP Master(s) concerned, together with all consents, approvals, copy information, credits and other information and materials reasonably necessary for Company to manufacture and release Records embodying the Masters, and to manufacture album covers and other packaging therefor.

5. Advance: Company shall pay to Licensor an advance in the amount of Ten Thousand Dollars ($10,000.00), the receipt of which is hereby acknowledged. Said advance shall be recoupable from royalties (excluding mechanicals) payable to Licensor hereunder.

6. Royalties: (a) Company shall pay royalties to Licensor in an amount equal to twelve percent (12%) (hereinafter referred to as the "Basic LP Royalty") based on Company's price per dealer (PPD), without any deductions for packaging or free goods. All royalties payable hereunder shall be based on one hundred percent (100%) of net sales of all Records sold and not returned for which Company is paid or credited. As used herein, the PPD for the double disc cd package shall be deemed to be $12.99. By way of example, but without limitation, the penny rate for the sale of one 2-cd package shall be an amount equal to $1.5588.

(b) In the event that any Master hereunder is coupled with other master recordings, Licensor shall be paid a royalty equal to the Basic LP Royalty multiplied by a fraction, the numerator of which is the number of Masters hereunder and the denominator of which is the total number of royalty-bearing master recordings included on any such release.

(c) Notwithstanding anything to the contrary contained herein, it is hereby agreed that Company shall have the right to recoup from royalties (excluding mechanical royalties) due and owing to Licensor hereunder an amount equal to fifty percent (50%) of the manufacturing costs paid by Company prior to the close of the applicable accounting period.

7. Mechanical Royalties: Company shall pay mechanical royalties in respect of any musical compositions owned and controlled by Orb Music, and currently administered by Wixen Music Publishing (hereinafter referred to as "Controlled Compositions"), in an amount equal to eighty-five percent (85%) of the current minimum statutory rate in effect on the date hereof, as first shown above. Mechanical royalties shall be paid by Company only in respect of one (1) version of any musical composition included on the Album. It is hereby acknowledged and agreed that pursuant to the foregoing calculation, the mechanical royalty rate payable in respect of each Controlled Composition shall be an amount equal to 6.8 cents ($0.068) per composition multiplied by a total of thirteen (13) musical compositions contained on the 2-cd Album, which such

sum equals a total amount of mechanical royalties payable per Album of 88.4 cents ($0.884). In addition, Company shall be obligated to pay mechanical royalties in respect of the two (2) non-controlled compositions, "Don't Shake Me Lucifer" and "To Etta Dog", both of which are owned and controlled by the Roky Erickson Trust, and currently administered by Trace Elements. Company shall not be required to pay mechanical royalties on promos, and other non-royalty records hereunder.

8. Accounting/Books and Records: Company shall account to Licensor on a semi-annual basis with statements and payments due no later than March 31 and September 31 of each calendar year for the semi-annual period ending December 31 and June 30, respectively. All statements shall be binding and conclusive upon Licensor unless subject to Licensor's written objection received by Company no later than two (2) years from the date the statement was rendered. Licensor shall have the right to inspect Company's books and records no more than once a year, upon reasonable notice, during normal business hours, at Company's principal place of business.

9. Rights Granted:

(a) Company shall have the sole and exclusive right during the License Term to manufacture one double-cd album (the "Album") on Records and to distribute, sell, advertise, publicize, market and promote same throughout the Territory. Licensor shall also own all right, title, and interest, including the worldwide copyright, in and to any artwork furnished by Licensor used on or in connection with any Records released hereunder. Licensor shall retain ownership of all rights, title and interest during the License Term, throughout the Territory, including the sound recording copyrights, in and to all Masters hereunder and to copyright such sound recordings in its name as owner and author thereof, and to secure any and all renewals and extensions of such copyrights.

(b) Company shall have the non-exclusive right to use Artist's name, approved likeness, and other identification (including any professional name), and the non-exclusive right to use the names and likenesses of any and all musicians whose performances are included on any Masters hereunder in connection with the manufacture, sale, distribution and promotion of Records embodying the Masters hereunder. In the event that Company submits any photos, bios, or other materials for Licensor's approval and Licensor shall fail to approve or object within ten (10) days, such failure shall be deemed approval hereunder.

(c) Company shall have the exclusive right throughout the Territory to manufacture, distribute and sell Records which embody the Masters hereunder and to publicly perform or cause the public performance on radio, including internet radio as determined in Company's reasonable business judgment. Licensor shall retain the sole and exclusive right to license the Masters hereunder for all other purposes, including but not limited to usage in motion pictures, television, and commercial advertisements.

(d) Company shall have the right to include one (1) Master hereunder, to be mutually selected by Licensor and Company, on a sampler album to be released by Company.

10. <u>Warranties/Representations</u>: Licensor hereby warrants, represents and agrees that:

(a) Licensor has the right to enter into this agreement, and has not entered into any other agreement that would interfere with Company's full enjoyment of the rights granted hereunder;

(b) Licensor is under no disability, restriction or prohibition, whether contractual or otherwise, with respect to Licensor's right to execute this contract and to grant the rights granted to Company by Licensor hereunder;

(c) No controlled compositions nor any other selections, materials, ideas, or other properties furnished or selected by Licensor and embodied or contained in or used in connections with the Masters will violate or infringe upon any common law or statutory rights of any person, firm or corporation, including, without limitation, contractual rights, copyrights, trademarks and rights of privacy. Licensor shall be solely responsible for the payment of any fees in respect of the clearance of samples contained on any Master delivered hereunder.

(d) Except as otherwise specifically provided herein, Company shall have no obligation hereunder or otherwise to pay any person, firm or corporation any amounts in connection with the recording or exploitation of the Masters, and Company shall be subject to no other costs, fees, advances, charges, payments, and royalties for and in connection with the recording sale, use or exploitation of the Masters or the exercise hereunder. Licensor shall have or will have a valid agreement with all individuals and entities who render services or grant rights in connection with the Masters sufficient to grant Company and its distributors all of the rights necessary or desirable for the full performance of this agreement and Company's full enjoyment of the rights herein granted, and neither Company's nor any of its distributors will have any liability by reason of any payment due to any such individuals and/or entities.

(e) All Masters and other recordings hereunder are, and the names "Roky Erickson" and "Orb Productions" are and shall be free of all liens and encumbrances, and there are and will be no claims, demands, or actions pending or threatened with respect thereto.

11. <u>Indemnification</u>: Licensor and Company hereby agree to and hereby indemnify, save and hold each other harmless from any and all damages, liabilities, costs, losses and expenses (including costs and reasonable attorneys fees) arising out of or connected with any claim, demand or action which is inconsistent with any of the warranties, representations or covenants made in this contract and which results in a final, non-appealable judgment in a court of competent jurisdiction or which is settled with the indemnitor's consent.

12. <u>Release Commitment</u>: Company shall provide for the initial domestic release of the Album hereunder no later than one hundred and twenty (120) days following Licensor's delivery and Company's acceptance of the Masters, as set forth in Paragraph 4 above. In the event that Company shall fail to release the Album in the manner set forth

in the previous sentence, Licensor shall be required to give Company written notice in the manner set forth in the notice and cure provision of paragraph 14(h) below.

13. <u>Artwork</u>: The form and content of the proposed album cover artwork to be prepared by Company shall be subject to Licensor's approval, not to be unreasonably withheld

14. <u>Miscellaneous</u>:

(a) This Agreement constitutes the entire agreement between the parties relative to the subject matter hereof and supersedes all other understandings and agreements between the parties whether oral or written.

(b) This Agreement may not be modified orally; no waiver, amendment or modification shall be binding or effective unless in writing and signed by the party sought to be bound.

(c) This Agreement may be executed in one or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

(d) If any part of this Agreement shall be declared invalid or unenforceable by court of competent jurisdiction, it shall not affect the validity of the balance of this Agreement.

(e) This Agreement shall inure to the benefit of and be binding upon each party and its successors and assigns.

(f) Nothing contained in this Agreement shall constitute a partnership or joint venture between the parties hereto or constitute either party the agent of the other.

(g) No waiver by either party of any term or provision of this contract or of any default hereunder shall affect Licensor's or Company's respective rights thereafter to enforce such term or provision or to exercise any right or remedy in the event of any other default, whether or not similar.

(h) Neither party shall be deemed to be in breach of any of its obligations hereunder unless and until given written notice by certified or registered mail, return receipt requested, of the nature of such breach or alleged breach and shall thereafter fail to cure same within thirty (30) days after its receipt of such written notice.

(i) This contract has been entered into in the State of California, and its validity, construction, interpretation and legal effect shall be governed by the laws of the State of California.

If the foregoing reflects your understanding and agreement, please indicate by signing in the space provided below.

AGREED:

_____        _____
Company/John Mermis                                              Licensor/Craig Luckin
for Sympathy for the Record Industry                   for Orb Productions

W:\SIMONS\Craig Luckin\SFRILicAgm.021202.wpd

"EXHIBIT A"

THE EVIL ONE

DISK ONE

1. Two Headed Dog (Red Temple Prayer)     (3:15)
2. I Think Of Demons                      (2:43)
3. Creature With The Atom Brain           (4:10)
4. The Wind And More                      (3:57)
5. Don't Shake Me Lucifer                 (2:49)
6. Bloody Hammer                          (4:19)
7. Stand For The Fire Demon               (5:23)
8. Click Your Fingers Applauding The Play (2:31)
9. If You Have Ghosts                     (3:08)
10. I Walked With A Zombie                (2:39)
11. Night Of The Vampire                  (4:15)
12. Its A Cold Night For Alligators       (3:00)
13. Mine Mine Mind                        (2:31)
14. Sputnik                               (4:36)
15. White Faces                           (2:30)

DISK ONE       Total Time        (52:54)


DISK TWO (The Modern Humans Show on August 20, 1979 with Chris Knab & KSJO's DJ _____ )

1. Click Your Fingers Applauding The Play    (2:31)
2. Roky on Modern Humans Show Part 1         (0:38)
3. Its A Cold Night For Alligators           (4:36)
4. Roky on Modern Humans Show Part 2         (1:38)
5. Creature With The Atom Brain              (3:00)
6. Roky on Modern Humans Show Part 3         (0:47)
7. The Night Of The Vampire                  (2:20)
8. Roky on Modern Humans Show Part 4         (1:56)
9. White Faces                               (2:38)
10. Bloody Hammer                            (4:47)
11. Roky on Modern Humans Show Part 5        (1:26)
12. Sputnik                                  (4:30)
13. Two Headed Dog (Red Temple Prayer)       (3:24)
14. Roky on Modern Humans Show Part 6        (0:54)
15. On Air Caller #1, Buzzy Bee (aka Stu Cook) (1:07)
16. On Air Caller #2, Cocky Bill             (0:49)
17. On Air Caller #3, Hubcap                 (1:40)

18. Mine Mine Mind (2:35)
19. Roky on Modern Humans Show Part 7 (2:17)
20. I Walked With A Zombie (2:40)

DISK TWO   TOTAL TIME (48:09)